## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | ) | Case No. 24-60504 |
| | ) | |
| ERIC RALLS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| DEJ PARTNERS, LLC, | ) | Adv. Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC RALLS, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DETERMINATION OF NONDISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523

DEJ Partners, LLC ("DEJP), through its undersigned counsel, submits the following *Complaint for Determination of Nondischargeability of Debt Under 11 U.S.C. § 523* (the "Complaint") against Eric Ralls ("Ralls" or the "Debtor"), stating as follows:

### PARTIES

1.  DEJP is a California limited liability company with its principal place of business at 331 Vineland Avenue, City of Industry, California 91746.

2.  Ralls is an adult individual residing at 6691 Park Slope, Tyler, Texas 75703.

### JURISDICTION AND VENUE

3.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a) and (b).

4.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1409, because this adversary proceeding relates to bankruptcy case before this district and division. *See In re Ralls*, Ch. 11 Case No. 24-60504 (Bankr. E.D. Tex. Tyler Div. Aug. 18, 2024) (the "Bankruptcy Case").

6.      This proceeding has been brought in accordance with section 523 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4004 and 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      Pursuant to Bankruptcy Rule 7008, DEJP consents to adjudication and entry of final orders and judgments by this Court for any and all matters arising in or related to this adversary proceeding.

8.      This Complaint is timely because the last day by which DEJP may oppose discharge or dischargeability is November 25, 2024.

## NATURE OF THE ADVERSARY PROCEEDING

9.      DEJP commenced this adversary proceeding to obtain a determination of the dischargeability of debts owed by Debtor to DEJP that were obtained by Debtor's fraud and willful and malicious conduct.

10.     Ralls confessed to a Judgment in favor of DEJP in the amount of $1,500,000.00 based on fraud and malicious conduct in the attached "Confession of Judgment." *See* Exhibit 1.

11.     The Confession of Judgment has been entered as a final Judgment against Ralls in the District Court for San Miguel County, Colorado (the "State Court"). *See* Exhibit 2.

12.     The State Court additionally entered final Judgment against Ralls and in favor of DEJP in the amount of $978,043.23 arising from Ralls' fraudulent and unauthorized use of DEJP's American Express corporate card (the "Amex Judgment"). *See* Exhibit 3.

13.     The State Court additionally entered final Judgment against Ralls and in favor of DEJP for attorney fees in the amount of $63,856.35 incurred as a result of Ralls' contemptuous conduct (the "Attorney Fee Judgment"). *See* Exhibit 4.

14.     DEJP seeks an order declaring the three Judgments in the amount of $2,541,899.58 (collectively, the "DEJP Judgments") owed by Debtor to DEJP, together with all interest due thereon, nondischargeable under sections 523(a)(2), (a)(4), (a)(6), and (a)(19) of the Bankruptcy Code, and awarding DEJP its costs, including reasonable attorneys' fees, incurred in this action.

**GENERAL ALLEGATIONS**

**PlantSnap Formation**

15.     In 2016, Ralls founded a company known as PlantSnap, Inc.

16.     From PlantSnap's formation until March 9, 2021, Ralls was PlantSnap's majority shareholder, director, and Chief Executive Officer.

17.     PlantSnap owns a mobile application that allows users to identify plant types through their cell phone camera (the "PlantSnap App").

18.     PlantSnap's operations are conducted through numerous accounts, including, but not limited to, Alpine Bank, Amazon Web Services ("AWS"), Apple App Store Connect, CleverTap, Dropbox, Facebook, Firebase, GoDaddy, Google Play Console, Google Workspace Suite ("G Suite"), Huawei HMS Store, Imagga, Instagram, No Marker, Pinterest, QuickBooks, and Singular (collectively, the "Accounts").

19.     In February 2017, DEJP became PlantSnap's first major seed investor.  Daniel Johnson ("Mr. Johnson") is the general partner of DEJP.

**Agreements Between PlantSnap, Ralls, and DEJP**

20.     Over the course of two years, PlantSnap, Ralls, and DEJP executed numerous agreements in which DEJP loaned money or extended credit to PlantSnap.

<u>The Consolidated Note</u>

21.     On September 30, 2019, PlantSnap and DEJP entered a Consolidated Note in the principal amount of $9,103,301.44 (the "Consolidated Note").

22.     As security for PlantSnap performing its obligations under the Consolidated Note, Ralls agreed to pledge to DEJP his personal interests in 750,000 shares of common stock in PlantSnap (the "Pledged Shares").

23.     The Consolidated Note states that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP], to have and to hold the Pledged [Shares]."

24.     The Consolidated Note further provides that, "All instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in blank, including duly executed blank stock powers."

25.     The Consolidated Note further states, "Upon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral."

26.     The Pledged Shares were escrowed with a law firm ("Pivotal").

27.     Ralls also executed an Assignment Separate from Certificate (the "Stock Power").

28.     The Stock Power enabled DEJP to effectuate taking possession of the Pledged Shares upon the occurrence of an event of default.

### Amex Agreement

29.     PlantSnap, Ralls, and DEJP separately entered a Credit and Reimbursement Agreement dated August 15, 2017 (the "Amex Agreement").

30.     Pursuant to the Amex Agreement, Mr. Johnson authorized PlantSnap to use DEJP's American Express card (the "Card") in exchange for the repayment of card charges plus interest.

31.     The charged amounts and interest on those charged amounts became due and payable within five days of receipt of the Card statement.

32.     Under the Amex Agreement, an Event of Default occurs when PlantSnap fails to pay the amounts due under the Amex Agreement when due, and fails to cure such default within five business days of written notice of the default.

33.     PlantSnap, acting through Ralls, agreed to "only use the [Card] for reasonable or necessary company related expenses."

34.     PlantSnap, acting through Ralls, agreed to "obtain prior written approval of [DEJP] prior to making charges in excess of $10,000."

35.     As security for PlantSnap performing its obligations under the Amex Agreement, Ralls agreed to pledge the Pledged Shares.

36.     The total number of the Pledged Shares pledged under the Amex Agreement was related to the total amount owed under the Amex Agreement at the time of the Event of Default.

37.     For example, if the total amount owed under the Amex Agreement at the time of the Event of Default was $3,000.00, then the total number of the Pledged Shares pledged under the Amex Agreement was 3,000.

38.     The Amex Agreement states that Ralls "assigns, transfers, sets over and delivers all of the Pledged [Shares] to [DEJP], to have and to hold the Pledged [Shares]."

39.     The Amex Agreement states, "All instruments representing or evidencing the Pledged Collateral shall be delivered to and held by or on behalf of Buyer pursuant hereto and shall be accompanied by duly executed instruments of transfer or assignment in lank, including duly executed blank stock powers."

40.     The Amex Agreement further states, "Upon the occurrence and during the continuation of an Event of Default, then or at any time after such declaration and following written notice to Ralls, Buyer . . . is hereby authorized and empowered to transfer and register in its name or in the name of its nominee the whole or any part of the Pledged Collateral."

**PlantSnap Defaults on the Obligations**

41.     As of February 24, 2021, PlantSnap had failed to repay $11,398,304.11 in outstanding principal and interest owed to DEJP under the Consolidated Note.

42.     As of February 24, 2021, PlantSnap had failed to repay $978,043.23 in outstanding principal and interest owed to DEJP under the Amex Agreement.

43.     On February 24, 2021, DEJP served a Notice of Default and Demand for Repayment to PlantSnap (the "Notice of Default").

44.     PlantSnap failed to cure the defaults, triggering an Event of Default under both the Consolidated Note and the Amex Agreement.

**Ralls is Removed as a Shareholder, Director, and Officer of PlantSnap**

45.     On March 6, 2021, DEJP sent a letter to Ralls, notifying him that DEJP intended to exercise its right to take ownership of the Pledged Shares (the "Notice of Invocation").

46.     On March 8, 2019, following receipt of the completed Stock Power and confirmation that Ralls received the Notice of Invocation, PlantSnap transferred the Pledged Shares from Ralls to DEJP on PlantSnap's stock ledger.

47.     On March 9, 2021, Pivotal delivered the Pledged Shares to Mr. Johnson and PlantSnap's counsel.

48.     DEJP became the majority shareholder of PlantSnap as a result of the transfer.

49.     On March 9, 2021, DEJP provided a signed written consent to PlantSnap that removed Ralls as a director on PlantSnap's Board of Directors.

50.     DEJP appointed Mr. Johnson as the sole member of the Board of Directors.

51.     On March 9, 2021, the Board issued a Written Consent of the Board of Directors of PlantSnap Inc. (the "Resolutions").

52.     The Resolutions provided that:

    a.     Ralls was removed from any and all officer or director positions with PlantSnap;

    b.     Ralls was removed as an authorized person and/or signatory on PlantSnap's accounts or contracts;

    c.     Ralls no longer has the authority to act on behalf of PlantSnap; and

    d.     Matthew Giblin ("Giblin"), the Chief Operations Officer, was appointed as the Chief Executive Officer, Treasurer, and Secretary.

53.     On March 11, 2021, PlantSnap's counsel sent a cease and desist and demand for turnover letter to Ralls (the "Cease and Desist Letter").

**Ralls' Wrongful Actions During His Period of Control of PlantSnap**

Ralls' Self-Dealing with Earth

54.     Ralls is the sole officer and director of non-party Earth.com, Inc. ("Earth").

55.     Upon information and belief, Earth is the alter ego of Ralls.

56.     Earth provides news and information concerning nature, science, and the environment through the website, http://www.earth.com/ (the "Earth Domain").

57.     Earth has no ownership interest in the Earth Domain.

58.     Earth previously rented the Earth Domain pursuant to that certain Rent-to-Own—Domain Name Sale Agreement dated June 27, 2016 between Ralls Enterprises, LLC and Innovation HQ, Inc. ("Innovation") (the "Rent-to-Own Agreement").

59.     Earth defaulted on the Rent-to-Own Agreement within months of executing the agreement.

60.     On April 25, 2022, Innovation sent a letter to Ralls, declaring a default under the Rent-to-Own Agreement and notifying Ralls of Innovation's intention to repossess the Earth Domain.

61.     Neither Ralls nor Earth (nor any affiliated entity) cured the default, and Innovation repossessed the Earth Domain.

62.     Ralls used PlantSnap's vendors, contractors, and intellectual property to further Earth's operations without compensating PlantSnap.

63.     The database that comprises the plant profiles, which allow the PlantSnap App to function, is in the possession or control of Earth.

64.     PlantSnap does not have access to those plant profile pages.

65.     PlantSnap ran three crowdfunding campaigns.

66.     At the onset of the third campaign in October 2019, Giblin was responsible for preparing financials and having PlantSnap's financials audited.

67.     During that process, Giblin discovered, for the first time, that Ralls had been paying Earth hundreds of thousands of dollars under the category, "Advertising," under a certain Sponsorship Agreement dated January 1, 2017 between PlantSnap and Earth (the "Sponsorship Agreement").

68.     The Sponsorship Agreement provided no discernable value to PlantSnap.

69. Upon information and belief, Ralls executed the Sponsorship Agreement in an effort to justify improper monetary transfers from PlantSnap to Earth.

70. Upon information and belief, Ralls did not execute the Sponsorship Agreement until well-after the purported January 1, 2017 date of execution.

71. Following the discovery that Ralls transferred PlantSnap's funds to Earth, Ralls signed a Debt Cleanup Board Resolution, which required Ralls to (a) transfer financial control to Giblin and Johnson for budgeting and banking purposes, and (b) segregate funds from the third crowdfunding campaign into a separate bank account.

72. Ralls signed the Debt Cleanup Board Resolution with no intention to abide by its terms.

73. Ralls refused Giblin access to PlantSnap's bank account.

74. Ralls refused to change the signatory authority on PlantSnap's bank account.

### DHN Unauthorized Loan and Misrepresentations

75. PlantSnap, DEJP, Ralls, and Earth executed a certain Memorandum of Terms for Purchase of Series Seed Preferred Stock of PlantSnap Inc. dated January 27, 2021 (the "Memorandum").

76. The nonbinding Memorandum was entered into in an attempt to reduce PlantSnap's obligations to DEJP by converting DEJP's debt to equity, and to prevent DEJP from issuing a notice of default.

77. The Memorandum refers to Ralls and Earth as if they were one entity.

78. PlantSnap, DEJP, Ralls, and Earth made several representations as part of the Memorandum.

79.     One of those representations concerned PlantSnap's relationship with Evergreen Garden Center ("Evergreen"), and a payment made by Evergreen in the amount of $300,000.00 pursuant to an agreement between PlantSnap and Evergreen (the "Evergreen Payment").

80.     Ralls represented, "Ralls warrants that he has not, as of the date of this Memorandum, and will not, hypothecate, pledge, promise, factor, obtain an advance upon, or encumber in any other fashion the proposed initial Evergreen partnership payment."

81.     Despite representing that he would not "obtain an advance upon" the Evergreen Payment, Ralls had already taken the letter of intent that the Evergreen Payment was based on to DHN Capital, LLC d/b/a Nations Interbanc ("DHN"), a factoring company, on or around December 24, 2020.

82.     Ralls secretly and without authority obtained $214,000.00 in accounts receivable advance loans (the "DHN Advance").

83.     As collateral for the DHN Advance, Ralls assigned the revenue that PlantSnap received from MonetizeMore and two app stores (the "Collateral Sources").

84.     Giblin discovered the existence of the DHN Advance upon the Evergreen Payment in February of 2021.

85.     On February 15 and 17, 2021, Giblin informed Ralls that he lacked authority to undertake the DHN Advance.

86.     DHN required that the payments from the Collateral Sources be deposited directly into a DHN sweep account.

87.     DHN did not receive the December and January MonetizeMore remittances.

88.   Ralls changed the remittance instructions and redirected several payments to PlantSnap's accounts, including a $10,457.29 payment on January 19, 2021 and a $6,458.24 payment on February 16, 2021.

89.   Ralls fraudulently transferred a substantial portion of the diverted revenue from the Collateral Sources from PlantSnap to Earth.

90.   DHN issued a notice of default to PlantSnap and demanded that PlantSnap cure its default by March 1, 2021.

91.   Ralls cured the default sometime in March of 2021 after DHN threatened to notify the two app stores, the major sources of revenue for PlantSnap, and only after fraudulently transferring more than $80,000.00 of the Evergreen Payment to Earth.

92.   Ralls' wrongful actions and false misrepresentations effectively destroyed PlantSnap's ability to eliminate more than $5,971,186.47 in outstanding obligations owed to DEJP.

<u>AWS Electronic Payment Error</u>

93.   PlantSnap's servers are hosted by AWS.

94.   Without AWS, the PlantSnap App would cease functioning without another web hosting service.

95.   In December of 2020, PlantSnap was three months behind in payments to AWS and owed approximately $33,000.00.

96.   In January of 2021, Ralls represented to AWS and Giblin that Ralls had paid the delinquent payments.

97.   Ralls intentionally deceived AWS and PlantSnap into believing Ralls sent the payments.

98.  Upon information and belief, Ralls initiated an electronic transfer to AWS when he was aware that there were insufficient funds to cover such payments, and then took a screen shot of the initiated payment and shared that screen shot with AWS.

99.  AWS later reported that there was an error with the payments.

100.  Several days later, Ralls claimed not to know what happened and stated there must be an error in the payment system.

Ralls Stole PlantSnap's Funds

101.  Until DEJP took control of PlantSnap, there was an extensive amount of commingling between PlantSnap, Ralls, and Earth.

102.  Unbeknownst to DEJP, Ralls secretly diverted at least $902,003.00 from PlantSnap in 2018 and 2019 to pay Earth's expenses.

103.  PlantSnap received no consideration for paying Earth's expenses.

104.  In total, Ralls and Earth stole at least $2,620,731 as set forth below:

a.  $1,741,316 in transfers from PlantSnap's bank accounts to other bank accounts under Ralls' control;

b.  $366,048 from Ralls' use of business credit cards for personal spending;

c.  $292,259 in payments made by PlantSnap to the personal credit cards of Ralls and his mother, Karen Barett;

d.  $104,000 in rent paid for Ralls' house in Telluride, Colorado that was reported as a business expense;

e.  $65,007.28 paid towards a prior litigation settlement related to GreenAtom, Inc., another affiliated entity of Ralls, for which PlantSnap has no involvement;

f.  $32,000 paid directly to Ralls' mother; and

g.  $25,107 in ATM withdrawals and other cash withdrawals from PlantSnap's checking accounts.

105.    In late-2020 and early-2021, Ralls then solicited six investors (the "705 Investors") to invest in PlantSnap.

106.    Between February 22 and March 8, 2021, and despite knowing the company had defaulted on its obligation to DEJP, Ralls entered into six convertible notes on behalf of PlantSnap with the 705 Investors.

107.    DEJP did not consent to the issuance of the six convertible notes, as required under a Stockholders' Agreement dated October 19, 2017 between PlantSnap, Ralls, and DEJP.

108.    The last three promissory notes executed by Ralls, purportedly on behalf of PlantSnap with the 705 Investors, occurred just two days after DEJP had informed Ralls that it was taking ownership of the Pledged Shares, and just one day before Ralls was removed as a director and officer.

109.    Of these six 705 Investors, one "Accredited Investor," who could "only scrape together about $500," eventually agreed to invest $5,000, an amount she clearly could not afford, after Ralls reduced the "minimum" investment amount from $125,000 to $20,000 to $5,000.

110.    On account of DEJP foreclosing on Ralls' shares in PlantSnap, and the Board removing Ralls as an officer and director of PlantSnap, Ralls directed the 705 Investors to wire the funds directly to Earth's bank account – bypassing PlantSnap altogether.

111.    Ralls and Earth stole $705,000.00 from PlantSnap during this time, $630,000.00 of which funds were misappropriated by Ralls after he already had been removed as an officer, director, and shareholder of PlantSnap.

112.    When one investor asked why the money was being transferred to Earth, and not PlantSnap, Ralls stated on March 11, 2021, "I'm working to integrate earth.com and PlantSnap under one umbrella, and that umbrella is what you are buying stock in."

113.    This false statement was made two days after Ralls had been removed as an officer, director, and shareholder of PlantSnap.

114.    Ralls purposefully concealed a seventh investor, Philip N. Daly ("Daly"), with whom he executed a convertible promissory note on behalf of PlantSnap on March 5, 2021.

115.    During the State Court Action, Ralls did not identify Daly as a person with whom he solicited or entered into an agreement as an investor or creditor, despite PlantSnap and DEJP issuing written discovery in the State Court Action (as defined below) on such topics.

116.    DEJP only learned of Daly when he filed a Proof of Claim in Ralls' recent Colorado bankruptcy case (discussed below).

117.    While duping the 705 Investors and siphoning off PlantSnap's funds for his own benefit, Ralls failed to pay PlantSnap's creditors, including DEJP.

118.    Ralls conversion of the 705 Investor's funds resulted in a the State Court entering judgment against Ralls and in favor of PlantSnap for conversion in the amount of $705,000.00.

**Following His Removal, Ralls Continued to Wrongly Act on Behalf of PlantSnap**

119.    After losing his shares in PlantSnap and being removed as an officer and director of PlantSnap, Ralls took a number of steps to cover his tracks and assert control over PlantSnap's operations to DEJP's detriment and without DEJP's knowledge or authorization.

120.    Ralls ignored the Board's Resolutions and frustrated PlantSnap's operations.

121.    Ralls refused to turn over to PlantSnap the Accounts which were in his possession, custody, and control.

122.    Ralls prevented Giblin, PlantSnap's Chief Executive Officer, from accessing the Accounts, including PlantSnap's bank accounts and the two app stores, where a majority of PlantSnap's revenue is earned.

123.    On March 14, 2021, Ralls cut off Giblin's access to his company email account.

124.    Ralls prevented PlantSnap's consultants from accessing certain Accounts, inhibiting the consultants from performing their work as directed by the Board.

125.    Ralls continued to send messages to PlantSnap's contract counterparties, vendors, customers, and consultants claiming to be acting on PlantSnap's behalf.

126.    Ralls continued to act on PlantSnap's behalf, despite being removed as a shareholder and CEO.

127.    In a March 13, 2021 email to Evergreen and select PlantSnap individuals, Ralls indicated that he would continue to work on the PlantSnap/Evergreen partnership.

128.    On March 15, 2021, Ralls sent an email to certain consultants, stating "I AM allowed/able and that I SHOULD continue operating the company," and that he will continue "working to get PlantSnap 5.0 WITH all Evergreen content fully implemented and launched by April 1."

### The State Court Action

129.    On March 17, 2021, PlantSnap initiated an action against Ralls and Earth before the San Miguel County, Colorado District Court (the "State Court") in the case styled, *PlantSnap Inc. v. Ralls*, No. 2021 CV 30005 (the "State Court Action").  PlantSnap asserted claims against Ralls for conversion, civil theft, breach of fiduciary duties, aiding and abetting breach of fiduciary duties, fraud, unjust enrichment, constructive trust, and tortious interference with contractual relationships, seeking damages on account of Ralls and Earth's widespread fraud and civil theft, among other claims.

130.    DEJP was joined as a Third Party in the State Court Action.  DEJP asserted claims against Ralls and Earth, and later against several new entities formed by Ralls, for violations of

the Colorado Organized Crime Control Act, C.R.S. § 18-17-104, predicated upon recurrent acts of securities fraud; violations of the Uniform Fraudulent Transfer Act, C.R.S. § 38-8-105; and fraudulent inducement; among other claims.

131.   On April 23, 2021, the State Court held a full day evidentiary hearing on the parties' cross-motions for preliminary injunction at which DEJP and PlantSnap jointly sought a declaration that Ralls was properly removed from PlantSnap.

132.   On April 27, 2021, the State Court entered a *Combined Order Re: Plaintiff's and Defendant's Motions for Preliminary Injunction* (the "Combined Order"). Exhibit 5.

133.   In the Combined Order, the State Court rejected Ralls' "incredible" testimony and arguments as to why he was entitled to the Pledged Shares, finding that "Ralls was properly removed from the PlantSnap Board once [DEJP] proceeded pursuant to the Consolidated Note [and] Amex Agreement."

134.   As a result, the State Court (i) "immediately enjoined [Ralls] from acting on behalf of PlantSnap and representing to any third parties that he is currently affiliated with PlantSnap," and (ii) ordered that Ralls "shall immediately turn over complete access to all of PlantSnap's Account," including PlantSnap's G Suite.

135.   On April 27, 2021 at 4:31 PM MT, forty-two minutes after the Court entered the Combined Order, Ralls logged in as the system administrator of PlantSnap's G Suite and deleted fifteen email accounts, which included all communications between Ralls and the 705 Investors.

136.   Ralls refused to turn over access to PlantSnap's G Suite until shortly after the accounts were permanently deleted.

137.   Ralls even continued to operate a bank account in the name of PlantSnap well after the State Court entered the Combined Order removing him from PlantSnap.

**Ralls Forms Three New Entities to Perpetuate His Fraudulent Activities**

138.    Undeterred by the fact that his fraud was being systematically uncovered in the State Court Action, Ralls continued to perpetuate his fraud through three new entities he created in May of 2021: EarthSnap, Inc. ("EarthSnap"), Metaversal Knowledge, Inc. ("Metaversal"), and Digital Earth Medica, Inc. ("DEM," and collectively, the "New Ralls Entities").

139.    On May 19, 2021, Ralls incorporated EarthSnap.

140.    On May 25, 2021, Ralls incorporated Metaversal.

141.    On May 26, 2021, Ralls incorporated DEM.

142.    On or shortly after May 26, 2021, Ralls transferred all of his equity interest in Earth to DEM without consideration.

143.    Ralls, Earth, and DEM engaged in this conveyance without any consideration paid for Ralls' stock in Earth.

144.    Ralls incorporated the New Ralls Entities to obtain additional funds from unwitting creditors and investors, and to shield his and Earth's assets from PlantSnap and DEJP.

145.    Earth and the New Ralls Entities are each substantially controlled by and a mere instrumentality of Ralls.

146.    In May of 2021, immediately after forming the New Ralls Entities, Ralls attempted to solicit a $750,000 investment, offering to pledge as security the very same Pledged Shares in PlantSnap that the State Court already found DEJP had properly foreclosed upon.

147.    Ralls concealed and failed to disclose the conveyance of Earth's stock until it was uncovered by PlantSnap and DEJP in the State Court Action.

148.    On September 30, 2022, Ralls pleaded guilty to contempt for deleting PlantSnap's emails in the G Suite and for using a TIAA bank account held by PlantSnap for his own personal use in violation of the Combined Order.

149.    The State Court awarded PlantSnap and DEJP both remedial and punitive sanctions, which included awarding PlantSnap and DEJP $84,938.76 and $63,055.00, respectively, in fees and expenses for prosecuting the contempt motions, and sentencing Ralls to forty-eight hours in county jail.

150.    On February 28, 2023, DEJP moved for partial summary judgment against Ralls.

151.    On April 18, 2023, the State Court granted in part DEJP's motion for partial summary judgment, awarding $978,043.23 to DEJP against Ralls, and reaffirming again that DEJP properly foreclosed on the Pledged Shares.

### Ralls' First Bankruptcy

152.    On April 19, 2023, on the eve of trial in the State Court Action, Ralls (and several of his entities) filed a voluntary petition under subchapter V of chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the District of Colorado (the "Colorado Bankruptcy Court"). *See In re Ralls*, No. 23-11620-TBM (Bankr. D. Colo. Apr. 19, 2023); *In re Earth.com, Inc.*, No. 23-11621-TBM (Bankr. D. Colo. Apr. 19, 2023); *In re EarthSnap, Inc.*, No. 23-11622-TBM (Bankr. D. Colo. Apr. 19, 2023) (the "Colorado Bankruptcy Case").

153.    On May 8, 2023, PlantSnap and DEJP moved for relief from the automatic stay under section 362(d) of the Bankruptcy Code to liquidate their claims in the State Court Action.

154.    On July 19, 2023, the Court granted relief from the automatic stay for PlantSnap and DEJP to liquidate their claims in the State Court.

155.    In the Colorado Bankruptcy Case (through multiple filings), Ralls and his counsel made clear that the bankruptcy was filed solely to avoid going to trial in the State Court Action.

156.    Ralls and his entities dismissed the Colorado Bankruptcy Case shortly after the court granted PlantSnap's and DEJP's motion for relief from the automatic stay.

157.    After the Colorado Bankruptcy Case stay was lifted, trial was set, for a second time, in the State Court Action.

**Ralls' Settlement and Confession of Judgment**

158.    On February 19, 2024, DEJP and Ralls entered a Binding Term Sheet in which they agreed to a settlement of all claims in the State Court Action (the "Agreement").  Exhibit 6.

159.    In Colorado, a settlement agreement is a contract to end judicial proceedings. *See Recreational Dev. Co. v. Am. Constr. Co*., 749 P.2d 1002 (Colo. App.1987).

160.    A settlement agreement is governed by and found enforceable under common law contract principles. *See Yaekle v. Andrews*, 195 P.3d 1101, 1107 (Colo. 2008). Courts "interpret and enforce settlement agreements in accord with principles of contract law and with the policy favoring dispute resolution." *People v. Forsyth*, 292 P.3d 1248, 1255 (Colo. 2012).

161.    A court may summarily enforce a settlement agreement if it is undisputed that a settlement exists. *See Goltl v. Cummings*, P.2d 556, 559 (Colo. 1963) (stating courts "look with favor upon agreements and stipulations to end litigation, and will enforce them if possible").

162.    A settlement agreement can be enforced if the terms are sufficiently definite to allow a court to determine whether the parties have complied with them. *See Stice v. Peterson*, 355 P.2d 948 (Colo. 1960); *Mestas v. Martini*, 155 P.2d 161 (Colo. 1944).

163.    A complete and binding settlement exists in the form of the Agreement.

164.    The State Court agreed that the Agreement was a valid and binding contract.  On July 31, 2024, the State Couret entered Ralls' Confessed Judgment in DEJP's favor in the amount of $1,500,000 based on the Agreement being in default. *See* Ex 2.

165.    In the Confessed Judgment, Ralls admitted to fraud, fraudulent inducement, fraudulent transfer, conversion, civil theft, and common law fraud, deceit, or manipulation in connection with the sale of securities. *See id.*

166.    Ralls admitted to violations of sections 523(a)(2), (a)(4), (a)(6), and (a)(19) of the Bankruptcy Code.

167.    Pursuant to the Agreement, the Debtor Ralls and other non-Debtor defendants agreed to pay DEJP $1.5 million, the amount of which carries an 8% interest rate and 12% default interest rate.

168.    The Agreement also authorized DEJP to file a UCC-1 financing statement, which DEJP recorded in the State of Colorado.

169.    Of critical importance, Ralls also gave away all voting rights associated with his Digital Earth Media shares upon breach of the Agreement. The Agreement states "DEJP, upon an event of default, shall be empowered to exercise all voting and other rights associated with the Pledged Shares [in Digital Earth Media, the 100% owner of EarthSnap] until such time as their disposition pursuant to the Uniform Commercial Code."  Exhibit 6.

170.    In short, upon breach of the Agreement, Ralls lost ALL ability to vote his shares related to any of the companies (Digital Earth Media is the parent and 100% owner of both Earth.com and EarthSnap). As such, Ralls had no legal right to vote his shares in EarthSnap (including voting in favor of filing for bankruptcy).

171.    Prior to execution of the Agreement, DEJP also obtained two judgments against Ralls in the State Court Action, including: (i) a Judgment for $978,043.23, accruing statutory interest at the rate of 8% per annum, entered on April, 2023 (and reduced to a final judgment on March 4, 2024), stemming from Rall's fraudulent and unauthorized use of DEJP's Amex Card; and (ii) a Judgment for attorney fees of $63,856.35, accruing statutory interest at the rate of 8% per annum,  issued on December 29, 2022 (and reduced to a final judgment on March 4, 2024), stemming from Ralls' contempt of court related violations of court orders and destruction of evidence (for which Ralls also served a short jail sentence) (the "Judgments").

172.    The two Judgments were to be forgiven so long as Ralls honored his payment obligations under the Agreement.  He did not.  Ralls made only the first two installment payments under the Agreement and then stopped paying.  DEJP served him with written notice of default, providing him an opportunity to cure, which Ralls ignored.

173.    On July 31, 2024, the State Court found the Agreement was in default and entered the $1.5 million Confessed Judgment.  Exhibit 2.

174.    The three DEJP Judgments in the aggregate amount of $2,541,899.58 thus became due and owing, in full, upon Rall's default and entry of his Confessed Judgment by the State Court.

**Ralls Files His Second Bankruptcy**

175.    On August 18, 2024, Ralls filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

176.    DEJP timely filed Proof of Claim No. 10-1 (the "Claim"), asserting a claim for $2,478,043.00, the basis of which is the DEJP Judgments.

177.    The DEJP Judgments are all prepetition judgments, entered in the State Court Action, and signed by the Judge in that matter.

178.    The DEJP Judgments are nondischargeable under the Code.

## COUNT I
### Nondischargeability of the DEJP Judgments Under 11 U.S.C. § 523(a)(2)

179.    DEJP incorporates its prior allegations as if fully set forth herein.

180.    Section 523(a)(2) of the Bankruptcy Code provides, in relevant part, that there is no discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

181.    The Debtor obtained DEJP's money, property, and services through actual fraud.

182.    The Debtor admitted to violating section 523(a)(2) of the Bankruptcy Code as outlined in the Confession of Judgment, which was agreed to and entered by the State Court.

183.    The Debtor admitted that his conduct, and the resulting Confession of Judgment, met the standards set forth in section 523(a)(2) of the Bankruptcy Code.

184.    The damages subject to the DEJP Judgments were money and property obtained by actual fraud.

185.    As such, the Debtor's acknowledged fraud, the DEJP Judgments, totaling $2,541,899.58, are nondischargeable under section 523(a)(2) of the Bankruptcy Code.

186.    As a result of the Debtor's fraud, the amounts due DEJP are nondischargeable under section 523(a)(2) of the Bankruptcy Code.

## COUNT II
### Nondischargeability of the DEJP Judgments Under 11 U.S.C. § 523(a)(4)

187.    DEJP incorporates its prior allegations as if fully set forth herein.

188.    Section 523(a)(4) of the Bankruptcy Code provides that there is no discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

189.    C.R.S. § 18-4-401 (the "Theft Statute") defines theft, in relevant part, as:

A person commits theft when he knowingly obtains or exercises control over anything of value without authorization . . . and

> (a)  Intends to deprive the other person permanently of the use or benefit of the thing of value;

> (b)  Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; [or]

> (c)  Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit . . . .

190.   Under the Theft Statute, DEJP is entitled to treble damages and its attorneys' fees and costs in prosecuting its civil theft claim. *See* C.R.S. § 18-4-401.

191.   The acts of fraud, defalcation, embezzlement, and larceny as defined by section 523(a)(4) of the Bankruptcy Code are addressed by the Theft Statute

192.   The Debtor admitted to violating section 523(a)(4) of the Bankruptcy as outlined in the Confession of Judgment, which was agreed to and entered by the State Court.

193.   The Debtor admitted that his conduct, and the resulting Confession of Judgment, met the standards set forth in section 523(a)(4) of the Bankruptcy Code.

194.   The damages subject to the DEJP Judgments were based on fraud and defalcation while Ralls acted as President and CEO of PlantSnap, and were the product of embezzlement and larceny.

195.   As such, the Debtor's acknowledged fraud, the DEJP Judgments, totaling $2,541,899.58, are nondischargeable under section 523(a)(4) of the Bankruptcy Code.

**COUNT III**
**Nondischargeability of the DEJP Judgments Under 11 U.S.C. § 523(a)(6)**

196.   DEJP incorporates its prior allegations as if fully set forth herein.

197.    Section 523(a)(6) of the Bankruptcy Code provides that there is no discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

198.    The Debtor caused willful and malicious injuries to DEJP.

199.    Debtor admitted to violating section 523(a)(6) of the Bankruptcy Code as outlined in the Confession of Judgment, which was agreed to and entered by the State Court.

200.    The Debtor admitted that his conduct, and the resulting Confession of Judgment, met the standards set forth in section 523(a)(6) of the Bankruptcy Code.

201.    The damages subject to the DEJP Judgments were based on Ralls' willful and malicious injury to DEJP and its property

202.    As such, the Debtor's acknowledged fraud, the DEJP Judgments, totaling $2,541,899.58 are nondischargeable under section 523(a)(6) of the Bankruptcy Code.

203.    Moreover, Ralls admitted to deleting certain Accounts, specifically the email accounts in the G Suite, in willful violation of the State Court's Combined Order.

204.    As a result of Ralls' flagrant violation of the Combined Order, DEJP was required to expend $63,856.35 to unwind Ralls' contemptuous actions in order to prosecute its claims in the State Court Action.

205.    On March 4, 2024, the State Court entered Final Judgment against Ralls and in favor of DEJP on the Court's award of attorney fees to DEJP arising from Ralls' contemptuous conduct in the amount of $63,856.35.

206.    DEJP would not have incurred such fees and expenses had Ralls complied with his obligations under the Colorado Rules of Civil Procedure and the Combined Order.

207.    As a result of the willful and malicious injuries to DEJP caused by the Debtor, the portion of the DEJP Judgments relating to the attorneys' fee award is nondischargeable under section 523(a)(6) of the Bankruptcy Code.

**COUNT IV**
**Nondischargeability of the DEJP Judgments Under 11 U.S.C. § 523(a)(19)**

208.    DEJP incorporates its prior allegations as if fully set forth herein.

209.    Section 523(a)(19) of the Bankruptcy Code provides that there is no discharge of a debt when there are issues of common law fraud, deceit, or manipulation in connection with the sale of securities.

210.    The Debtor engaged in common law fraud, deceit, or manipulation in connection with the sale of securities.

211.    Debtor admitted to violating section 523(a)(19) of the Bankruptcy Code as outlined in the Confession of Judgment, which was agreed to and entered by the State Court.

212.    The Debtor admitted that his conduct, and the resulting Confession of Judgment, met the standards set forth in 11 U.S.C. §§ 523(a)(19).

213.    As such, the Debtor's acknowledged fraud, the PlantSnap Judgments, totaling $2,541,899.58, are nondischargeable under section 523(a)(6) of the Bankruptcy Code.

WHEREFORE, DEJ Partners, LLC respectfully requests relief against Ralls for the following:

A.    A declaratory judgment that each of the DEJP Judgments in the combined amount of $2,541,899.58, together with all interest due thereon, are nondischargeable under 11 U.S.C. § 523(a)(2), (4), (6), and/or (19);

B.    An award of DEJP's attorneys' fees and costs as this proceeding; together with

C.    Any other and further relief as the Court deems just and proper.

Dated: November 25, 2024

Respectfully submitted,

Vorys, Sater, Seymour and Pease LLP

*/s/ Steven R. Rech*
Steve R. Rech [TX 16649200]
909 Fannin Street, Suite 2700
Houston, TX  77010
(713) 588-7000
srech@vorys.com

and

Peter W Thomas [CO 27657]
PRAXIDICE, PC
124 W Hyman Ave 1A
Aspen, CO  81611
(970) 544-5900
peter@praxidicelaw.com

*Admission Pro Hac Vice Pending*